UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD OWENS,

    Plaintiff,

v.                                                          Case No. 1:05-cv-812
                                                           HON. ROBERT HOLMES BELL

MIKE WARNER,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

        Plaintiff Donald Owens, is a prisoner confined at the Southern Michigan Correctional Facility in Jackson, Michigan. Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Cashier Mike Warner.[1] Plaintiff alleges that defendant wrongfully seized the funds from his Veteran's Disability Benefit check to pay court ordered costs. The Michigan Department of Corrections has credited plaintiff's account in the amount of money that was used to pay court costs that was taken from plaintiff's disability check. Plaintiff filed a similar action in *Owens v. Simon, et al.*, No. 1:05-cv-733. The court dismissed that case for failure to show exhaustion of grievance remedies. The factual allegations were explained:

> Plaintiff's action concerns the seizure of his veteran's disability benefits to pay court ordered costs. Plaintiff is a Vietnam veteran who receives monthly disability benefits of $106.00. On November 24, 2003, the Sixth Circuit issued an order in *Owens v. Naylor*, No. 03-1055, in which plaintiff had pursued an unsuccessful appeal. The order taxed costs against plaintiff stating in part: "Upon consideration, it is ordered that costs in the amount of $155.00 are

---

[1] The prison accepted service for Mike Warner. However, apparently no one by the name of Mike Warner works as a cashier at the prison. Mary Warren has accepted responsibility as a defendant in this case and has filed a motion for summary judgment.

> GRANTED in part. Costs are denied as to the collection procedure mentioned by the parties." While the court's order fails to disclose what collection procedure was mentioned by the parties, Plaintiff suggests that the court disapproved the use of his veteran's disability benefits to pay the court-ordered costs. When Plaintiff's veteran's disability check was deposited to his prison account on July 2, 2004, it was immediately taken as payment toward the court-ordered costs, leaving a balance owed of $47.00. Plaintiff did not receive a hearing before or after the seizure of funds from his account.
>
> Under Michigan Department of Corrections Policy Directive, 04.02.105(T), "[a]ll funds received by a prisoner shall be used to satisfy his/her debts . . . ." The policy provides for some exceptions, but they do not include protection for veteran's disability benefits. In addition, Policy Directive 04.02.107(M) provides:
>
> Upon receipt of a court order requiring the Department to remove funds from a prisoner's account to pay court ordered filing fees or costs, or receipt of a federal court order requiring a prisoner to pay costs, the Administrative Office shall ensure that the funds are removed from the account in accordance with this policy and MICH. DEP'T. OF CORR., Policy Directive 04.02.105 unless otherwise specifically directed by the court.
>
> Under Policy Directive 04.02.105 a fact-finding hearing is required before funds are removed from a prisoner's institutional account, except when due to: (1) a court order directing the Department to remove funds from a prisoner's account, (2) the prisoner's written request, or (3) an order to pay restitution issued by a hearing officer for a misconduct.
>
> Plaintiff claims that Defendants violated 38 U.S.C. § 5301(a) by seizing money from his veteran's disability benefits check to pay court-ordered costs. Section 5301(a) provides that veteran disability payments "shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." Plaintiff further claims that he was deprived of property without a predeprivation hearing in violation of his due process rights. Apparently, Plaintiff did not receive a hearing because the funds removed from his account were used to pay court-ordered costs.

*Owens v. Simon, et al.*, No. 1:05-cv-733 (W.D. Mich. Nov. 18, 2005).

Plaintiff seeks compensatory damages of $50,000.00 and punitive damages of $100,000. Defendant has moved for summary judgment. Plaintiff has filed a cross motion for summary judgment.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant argues that plaintiff failed to establish that he exhausted his grievance remedies. Just as plaintiff failed to do so in his prior action that was dismissed for failure to exhaust

grievance remedies, plaintiff has failed to show that he exhausted his grievance remedies against defendant Warren. In order to properly exhaust Michigan Department of Corrections grievance procedures, a prisoner must raise each of his claims for the first time at Step I. *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003). Raising allegations against a particular defendant for the first time at Step II or III is insufficient to demonstrate exhaustion. *Id.* at 576 n.4. Plaintiff never named defendant Warren in a grievance. Therefore, it is recommended that this action be dismissed for lack of exhaustion.

Moreover, plaintiff has failed to show that defendant Warren violated his rights. Defendant Warren simply logs checks received, prepares a receipt and deposits funds at a local bank. She does not enter any information into prisoner accounts and did not remove any money from plaintiff's prison account. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984). Plaintiff has failed to show that defendant Warren was personally involved in removing money from his prison account to pay court costs. In the opinion of the undersigned, defendant Warren is entitled to dismissal in this action. Moreover, the Michigan Department of Corrections returned the money to plaintiff's account after the error was discovered. Plaintiff has failed to show that he suffered any damages as a result of the corrected error.

Defendant also moves for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known;  finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.  *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits.  *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent.  *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely disputed questions of material fact.  *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This

- 5 -

would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action

to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Plaintiff has failed to show that defendant violated any clearly established federal right. In the opinion of the undersigned, defendant is entitled to qualified immunity in this action.

Accordingly, it is recommended that defendant's motion for summary judgment (Docket #13) be granted, dismissing this case without prejudice for failure to establish exhaustion of grievance remedies or, alternatively, with prejudice on the merits of the case. It is further recommended that plaintiff's cross motion for summary judgment (Docket # 19) be denied.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court

grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   October 27, 2006